**UNITED STATES BANKRUPTCY COURT
FOR THE NOTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| THE SUMMIT AT COPPER SQUARE, LLC, et. al. | Case No. 09-38271 (Jointly Administered) |
| Debtors. | Hon. Eugene R. Wedoff |

## DEBTORS' MOTION FOR AUTHORIZATION TO (I) INCUR POST-PETITION DEBT ON A SUPER-PRIORITY BASES (II) GRANT CERTAIN LIENS AND OTHER RELIEF TO PROPSED DIP LENDER; AND (III) SCHEDULE A FINAL HEARING

To:   See Attached Service List

PLEASE TAKE NOTICE that on **Tuesday, November 10, 2009, at 9:30 a.m.** or as soon thereafter as counsel may be heard, we will appear before the United States Bankruptcy Judge Eugene R. Wedoff, or any other judge sitting in his stead, in Courtroom 744 of the Dirksen Federal Building, 219 S. Dearborn Street, Chicago, Illinois and then and there present the attached **Debtors' Motion for Authorization to (I) Incur Post-Petition Debt on a Super-Priority Basis (II) Grant CertainLiens and Other Relief to Proposed DIP Lender; and (III) Schedule a Final Hearing,** at which time and place you may appear as you see fit.

> THE SUMMIT AT COPPER SQUARE, LLC, et. al.
> **Debtor and Debtor in Possession**
>
> By:   /s/ Miriam R. Stein
>          One of Its Proposed Attorneys

Barry A. Chatz (06196639)
Michelle G. Novick (06207045)
Miriam R. Stein (06238163)
ARNSTEIN & LEHR LLP
120 S. Riverside Plaza, Suite 1200
Chicago, IL 60606
Tel: (312) 876-7100
Fax: (312) 876-0288

## CERTIFICATE OF SERVICE

I, Miriam R. Stein, an attorney, certify that I caused a copy of the attached Notice of Motion and Motion to be served on the parties listed on the attached service list by facsimile, in addition to those parties receiving notification by participation in the Court's ECF system on November 6, 2009.

/s/ Miriam Stein

## SERVICE LIST
### In re: The Summit at Copper Square, LLC
### Case No. 09-38271

| | | |
|---|---|---|
| APS<br>P.O. Box 2906<br>Phoenix, AZ 85062<br>Fax: 602-371-6165 | Blinds & Beyond<br>24795 North 119th Place<br>Scottsdale, AZ 85255-5928<br>Fax: 480-515-4655 | Bryan Cave<br>2 North Central Avenue<br>Suite 2200<br>Phoenix, AZ 85004<br>Fax: 602-364-7070 |
| City of Phoenix<br>251 West Washington St.<br>Phoenix, AZ 85003<br>Fax: 602-534-9866 | City Publishing<br>(Desert Living)<br>2525 East Camelback Rd.<br>Suite 120<br>Phoenix, AZ 85016<br>Fax: 602-508-9454 | Denise Resnik & Associates<br>717 East Maryland Avenue #110<br>Phoenix, AZ 85014-1561<br>Fax: 602-957-3159 |
| Denver Broadband Wireless Provider<br>565 east 70th Ave., Ste. 2W<br>Denver, CO 80229<br>Fax: 303-480-5497 | Developer Overhead<br>310 South 4th Street<br>Unit 710<br>Phoenix, AZ 85004<br>Fax: | Digital Home Lifestyles<br>4820 East McDowell Road<br>Phoenix, AZ 85008<br>Fax: 602-224-9103 |
| FNBN-RESCON I, LLC<br>c/o Tom Hosier, Stearns Bank<br>9225 East Shea Boulevard<br>Scottsdale, AZ 85260<br>Fax: 480-314-4900 | Hirsch Associates<br>225 West Hubbard Street<br>5th Floor<br>Chicago, IL 60654<br>Fax: 312-836-0019 | Maricopa County Treasurer<br>301 W. Jefferson Street #100<br>Phoenix, AZ 85003-2199<br>Fax: 602-506-1102 |
| Northwind Chilled Water<br>P.O. Box 53920 MS 9996<br>Phoenix, AZ 85072-3920<br>Fax: 602-371-6189 | OTL Consulting<br>2560 South Jersey Street<br>Denver, CO 80222<br>Fax: 303-753-2745 | Rossmar & Graham<br>9362 East Raintree Drive<br>Scottsdale, AZ 85260<br>Fax: 480-551-6000 |
| Summit Condominium Association<br>c/o Dan Collins<br>Collins, May, Potenza, Baran & Gillespie, PC.<br>201 N. Central Avenue<br>Phoenix, AZ 85004<br>f. 602-252-1114 | Veneklasen Assoc. Sound Engineer<br>1711 Sixteenth Street<br>Santa Monica, CA 90404<br>Fax: 310-396-3424 | Wireless Utility Solutions<br>6445 East Ohio Avenue #100<br>Denver, CO 80224<br>Fax: 303-329-6801 |

8759529.1

| The Weitz Company, LLC<br>5555 East Van Buren Street #155<br>Phoenix, AZ 85008-3422<br>Fax: 602-273-6622 | Stearns Bank<br>c/o William J. Barrett<br>Barack Ferrazzano Kirschbaum & Nagelberg LLP<br>200 W. Madison Street<br>Suite 3900<br>Chicago, IL 60606<br>Fax: 312-984-3150 | Office of the U.S. Trustee<br>219 South Dearborn<br>Room 873<br>Chicago, IL 60604<br>Fax: 312-886-5794 |
|---|---|---|
| Internal Revenue Service<br>P.O. Box 21126<br>Philadelphia, PA 19144<br>Fax: 215-516-2015 | Internal Revenue Service<br>Mail Stop 5010CHI<br>230 S. Dearborn Street<br>Suite 2300<br>Chicago, IL 60606<br>Fax: 312-566-2826 | Associate Area Counsel<br>SB/SE<br>200 W. Adams street<br>Suite 2300<br>Chicago, IL 60606<br>Fax: 312-368-8710 |
| Joel Nathan<br>United States Attorney<br>219 South Dearborn Street<br>Chicago, IL 60604<br>Fax: 312-886-0657 | D. Patrick Mullarkey<br>Tax Division (DOJ)<br>P.O. Box 55<br>Ben Franklin Station<br>Washington, DC 20044<br>Fax: 202-514-5238 | Illinois Department of Revenue<br>101 W. Jefferson Street<br>Springfield, IL 62702<br>Fax: 217-557-4390 |
| Illinois Department of Revenue<br>100 W. Randolph Street<br>7th Floor<br>Chicago, IL 60601<br>Fax: 312-814-3512 | Assistant Attorney General<br>Revenue Litigation Bureau<br>100 W. Randolph Street<br>13th Floor<br>Chicago, IL 60601<br>Fax: 312-814-3589 | |

8759529.1

UNITED STATES BANKRUPTCY COURT
FOR THE NOTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| THE SUMMIT AT COPPER SQUARE, LLC et al | Case No. 09-38271 (Jointly Administered) |
| Debtors. | Hon. Eugene R. Wedoff |

## DEBTORS' MOTION FOR AUTHORIZATION TO (I) INCUR POST-PETITION DEBT ON A SUPER-PRIORITY BASIS (II) GRANT CERTAIN LIENS AND OTHER RELIEF TO PROPOSED DIP LENDER; AND (III) SCHEDULE A FINAL HEARING

The Summit at Copper Square LLC et al, debtors and debtors in possession herein (collectively, the "Debtors") present this Motion ("Motion") for Authorization to (I) Incur Post Petition Debt on a super-priority basis; (II) Grant Certain Liens and Other Relief to Proposed DIP lender; and (II) schedule a final hearing on the Motion. In support of this Motion, the Debtors respectfully state as follows:

### INTRODUCTION

1.  The Debtors are seeking authority to incur post-petition debt ("DIP Financing") from Contrarian Management Group LLC ("CMG"), an entity unrelated to the Debtors, pursuant to the terms of a Letter of Intent dated October 19, 2009 (attached hereto as Exhibit B), up to a maximum facility of $4,000,000 to provide the Debtors with sufficient funds to satisfy ongoing expenses on an interim basis pursuant to the terms of a budget attached hereto as Exhibit A (the "DIP Budget"). The Debtors are also seeking authority to provide CMG with super priority liens on and security interests in the Debtors' assets to the extent of the actual amount of DIP Financing loaned to the Debtors, in

1

consideration for the DIP Financing.

2. The Debtors are in immediate need of interim DIP Financing to satisfy the expenses set forth on the attached Budget. The payment of the expenses will provide the Debtors' secured creditors with adequate protection of their pre-petition liens and security interests and will maximize the value of the Debtors' property going forward.

## JURISDICTION

3. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. sections 157 and 1334. Venue is proper in this District pursuant to 28 U.S.C. sections 1408 and 1409. Consideration of this Motion is a core proceeding pursuant to 28 U.S.C. section 157(b). The statutory predicates for the relief requested herein are sections 105(a), 507(a)(3) and 507(a)(4) of the Bankruptcy Code.

## BACKGROUND

4. On October 14, 2009, the Debtors filed separate voluntary petitions for relief under Chapter 11 of Title 11, United States Code ("Bankruptcy Code"). On October 27, 2009, the Court entered an Order consolidating the Debtors' cases for procedural purposes only.

5. Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors continue to operate their businesses and manage their financial affairs as debtors in possession. No trustee, examiner or committee has been appointed in either of these cases.

6. The Debtors are Illinois limited liability companies that hold title to a 23 story high rise condominium and retail project in downtown Phoenix, Arizona (the "Project").

2

Summit is the developer of the Project and holds title to the residential property. Summit Commercial holds title to the 8,700 square feet of commercial retail space located on the first floor of the Project. The retail space has been subdivided and separated from the Summit owned residential units.

7. Sales of condo units were proceeding successfully into 2008 when the downturn in the real estate market resulted in slowing sales. Nonetheless, sales of 91 condo units were closed and overall debt on the project was reduced by $40,000,000. Seventy-four condo units remain unsold. As of the Petition Date, the retail space is vacant. However, tentative lease agreements have been reached with potential tenants and long-term plans remain for full occupancy.

8. With the pre-petition slowing sales, the ability of the Debtors to service their underlying debt diminished. The original lender on the Project, First National Bank of Arizona, was taken over by the Federal Deposit Insurance Corporation in summer of 2008. At the time, First National Bank of Arizona (with participant Parkway Bank) held a first position mortgage on the Project securing a $16 Million loan to the Debtors. First National Bank of Arizona also held another mortgage on the Project securing a mezzanine loan in the amount of $11 million.

9. The FDIC sold the First National Bank debt portfolio to Stearns Bank, including the loans set forth above.

10. Prior to the Petition Date, the Debtors engaged The Weitz Company LLC ("Weitz") as their general contractor for the Project. The Weitz Company is owed approximately $3,200,000.00 from the Debtors and timely filed mechanic's liens against the Project for its unpaid general contractor fees and expenses. It is the position of the

Debtors and Weitz that Weitz's mechanic's lien primes Stearns Bank's mortgage relating to the mezzanine loan.

11.   Prior to the Petition Date, Stearns Bank commenced foreclosure on its first mortgage under Arizona law and scheduled a trustee sale for the Project for October 14, 2009. In order to maintain the underlying value for all other creditors and for the continued viability of the Debtors, the Debtors filed the instant cases prior to the pending trustee sale.

12.   The Debtors (Summit) generates approximately $17,500 in rental income from the Project. The Debtors have monthly expenses for utilities (for the unsold units), homeowners association dues (for the unsold units), taxes, management fees and miscellaneous expenses set forth on the attached budget ("DIP Budget"), attached hereto as Exhibit A.

### RELIEF REQUESTED

13.   By this Motion, and as more specifically set forth in the proposed Interim Order, the Debtors request, among other things:

    a.    authorization to obtain Post Petition Financing from CMG, under sections 364(c)(1), 364(c)(2) and 364(c)(3) of the Bankruptcy Code, on a super-priority basis over all other liens and security interests in the Debtors' assets and administrative expenses, with the exception of U.S. Trustee fees and Debtors' professional fees authorized by the Court.

    b.    authorization to grant CMG a senior secured note in the amount of the DIP Financing, to the extent of funds loaned to the Debtors;

    c.    authorization to grant CMG pursuant to section 364(c) of the Bankruptcy Code, security interests in all of the Debtors' currently owned and after acquired property to secure the Debtors' obligations under the DIP Financing, subject to allowance and payment of Professional Fees and U.S. Trustee Fees;

    d.    authorization to use the proceeds of the DIP Financing for the

4

purposes set forth in Exhibit A; and

e.  a final hearing on the Emergency Motion pursuant to Rule 4001 of the Bankruptcy Rules.

## THE POST PETITION FINANCING

14.  The Debtors do not have sufficient available sources of working capital and financing to satisfy all of the operating expenses relating to the Project without the DIP Financing. The ability of the Debtors to pay the maintenance and upkeep of the Project, including taxes, utilities, homeowners association dues, is essential to the Debtors' continued viability. The Debtors' critical need for financing is immediate. In the absence of DIP Financing, the Debtors will not be able to adequately protect the interests of its secured creditors and maintain the value of the Project for the benefit of all creditors. Accordingly, the Debtors will suffer irreparable harm if the DIP Financing were not approved. The DIP Financing is critical to the Debtors' successful reorganizations.

15.  Given the Debtors' current financial condition and capital structure, the Debtors are unable to obtain unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code, as an administrative expense. Financing on a post petition basis is not otherwise available without the Debtors' granting, pursuant to section 364(c)(1) of the Bankruptcy Code, claims having priority over any and all other administrative expenses of the kinds specified in sections 503(b) and 507(b) of the Bankruptcy Code, and securing such indebtedness and obligations with security interest in and liens upon the Project and the Debtors' other assets described below pursuant to section 364(c) of the Bankruptcy Code, subject to the allowance and payment of Professional Fees.[1]

---

[1] Professional Fees is defined herein as fees and expenses allowed by the

5

16.     The Debtors are offering the following terms of DIP Financing (which are set forth in greater detail in the Interim Financing Order). CMG, an entity unrelated to the Debtors, has agreed to the terms of the DIP Financing as set forth in this Motion and the Interim Financing Order.

17.     Pursuant to the Interim Order, CMG will receive a senior secured twelve (12) month note in the amount of their actual DIP Financing, not to exceed $4,000,000, with interest of 14.75% with interest payments upon entry of the Note and principal paid upon maturity (the "Senior Secured Note").

18.     The Senior Secured Note shall be collateralized by all of the assets of the Debtors which include without limitation, the Project and the Debtors' post petition cash and receivables (the "Post Petition Collateral").

19.     Additionally, the Senior Secured Note shall be granted a superpriority administrative expense under Bankruptcy Code section 364(c)(1), with priority over all costs and expenses of administration of the Debtors' cases that are incurred under any provision of the Bankruptcy Code, subject only to the allowance and payment of Professional Fees and U.S. Trustee fees.

20.     The Post Petition Financing shall terminate upon the earliest to occur of the following (the "Termination Date"):

        (a)    the later of the date which is twelve (12) months after the entry of an Interim Order; or
        (b)    confirmation of a Plan of Reorganization in these cases.

21.     Upon confirmation of a plan of reorganization, CMG, at its sole discretion,

---

Bankruptcy Court pursuant to §§330, 331 and/or 503 to individuals or entities employed in the case pursuant to §327 of the Bankruptcy Code.

may elect to convert the Senior Secured Note into equity in the reorganized Debtors.

## BASIS FOR RELIEF

### A. Legal Standards

22. **Approval Under Section 364(c) of the Bankruptcy Code.** The Debtors propose to obtain DIP Financing by providing security interests in and liens on the Post Petition Collateral pursuant to sections 364(c)(1), 364(c)(2) and 364(c)(3) of the Bankruptcy Code. The statutory requirement for obtaining post petition credit under 364(c) is a finding, made after notice and hearing, that the debtor is "unable to obtain unsecured credit allowable under section 503(b)(1) of [the Bankruptcy Code] ..." Section 364(c) financing is appropriate when the trustee or debtor in possession is unable to obtain unsecured credit allowable as an ordinary administration claim. In re Crouse Group, Inc., 71 B.R. 544, 549 (secured credit under section 364(c) is authorized, after notice and hearing, upon a showing that unsecured credit cannot be obtained).

23. Courts have articulated a three-part test to determine whether a debtor is entitled to section 364(c) financing:

    (a) The debtor is unable to obtain unsecured credit under section 364(b), i.e. by allowing a lender only an administrative claim;

    (b) The credit transaction is necessary to preserve the assets of the estate; and

    (c) The terms of the transaction are fair, reasonable and adequate, given the circumstances of the debtor-borrower and the proposed lender.

24. **The Debtors Do Not Have An Alternative to the DIP Facility.** The evidence at the interim hearing will show that the Debtors could not have obtained Post Petition Financing on an unsecured basis. As will be shown, the potential sources of a

post petition credit facility for the Debtors, obtainable on an expedited basis and on reasonable terms, were practically nonexistent. In these circumstances, "[t]he statute imposes no duty to seek credit from every possible lender before concluding that such credit is unavailable." Bray v. Shenandoah Federal Sav. and Loan Ass'n (In re Snowshoe Co.), 789 F.2d 1085, 1088 (4th Cir. 1986).

25. A debtor need only demonstrate "by a good faith effort that credit was not available without" the protections of section 364(c). Id. Where there are few lenders likely to be able and/or willing to extend the necessary credit to the debtor, "it would be unrealistic and unnecessary to require [the debtor] to conduct an exhaustive search for financing." In re Sky Valley, Inc., 100 B.R. 107, 113 (Bankr. N.D. Ga. 1988). Thus, the evidence introduced at the hearing will satisfy the requirement of section 364(c) that unsecured credit was unavailable to the Debtors.

26. **Application of the Business Judgment Standard**. After appropriate investigation and analysis, the Debtors' management concluded that the DIP Financing was the only alternative available under the circumstances of this case. Bankruptcy court routinely defer to the debtor's business judgment on most business decisions, including the decision to borrow money. See Group of Institutional Investors vs. Chicago Mil, St. P. & Pac. Ry., 318 U.S. 523, 550 (1943). "More exacting scrutiny would slow the administration of the debtor's estate and increase its costs, interfere with the Bankruptcy Code's provision for private control of administration of the estate, and threaten the court's ability to control a case impartially. Richmond Leasing Co. v. Capital Bank, N.A., 762 F.2d 1303, 1311 (5th Cir. 1985).

27. The Debtors have exercised sound business judgment in determining that a

post petition credit facility is appropriate and have satisfied the legal prerequisites to borrow under the DIP Financing. The terms of the DIP Financing are fair and reasonable and are in the best interests of the Debtors' estates. Accordingly, the Debtors should be granted authority to enter into the DIP Financing and borrow funds from CMG on the secured, administrative superpriority basis described above, pursuant to section 364(c) of the Bankruptcy Code, and take the actions contemplated by the Interim Order and requested herein.

28. Without the liquidity provided by the DIP Financing, the Debtors will not be able to fully satisfy its ongoing operational expenses to the extreme detriment to all of the Debtors' creditors.

29. **The Post Petition Financing Is Necessary to Preserve Assets of the Debtors' Estates.** No party in interest can seriously contend that the Debtors do not need immediate access to a DIP credit facility. Stearns Bank, in its motion to lift stay, states that the basis for lifting of the stay is the Debtors' inability to provide adequate protection of Stearns' Bank's interests. The DIP Financing will afford the Debtors sufficient available cash to maintain its operational expenses in the interim period, and provide for necessary improvements to the Project as part of the Debtors' long-term restructuring goals.

30. The success of these cases thus depends on the Debtors' ability to satisfy its necessary expenses through the use of DIP Financing.

31. **The Terms of the Post Petition Financing Are Fair, Reasonable and Appropriate.** The Debtors are unable to obtain unsecured credit allowable solely as an administrative expense. The proposed Post Petition Financing reflects the exercise of

sound and prudent business judgment. The Debtors believe that they would not have been able to obtain financing on an unsecured basis. In the Debtors' business judgment, the Post Petition Financing is the best financing option available under the circumstances of this case. The fairness and reasonableness of the terms of the Post Petition Financing will be shown at the Interim and Final Hearings.

**B.    The Debtors Will Suffer Immediate and Irreparable Harm If the Motion is Not Granted**

32.    The Debtors need cash to operate. The Debtors existing lender will not provide the Debtors with post petition financing. Accordingly, if the Debtors are not allowed to obtain additional funds under the DIP Financing, the Debtors' cases will fail.

33.    If the Court denies the Debtors' request for interim authority to obtain DIP Financing, the Debtors will suffer immediate and irreparable harm to their business.

34.    Because the Debtors lack sufficient cash with which to operate their businesses post petition, granting the requested relief is the only way to avoid the conversion of the case to a Chapter 7 liquidation and immediate and irreparable harm to the Debtors' reorganization efforts.

**C.    Good Faith**

35.    Inasmuch as the terms and conditions of the DIP Financing are fair and reasonable, and were negotiated by the parties in good faith and at arm's length, CMG should be accorded the benefits of section 364(e) of the Bankruptcy Code to the extent of any and all provisions of the DIP Financing.

**D.    Notice of Interim and Final Hearing**

36. Notice of this Motion has been given to (a) the Office of the United States Trustee for this District; (b) Stearns Bank (c) Weitz; and (d) all other parties requesting notice in these proceedings. In light of the nature of the relief requested, the Debtors submit that no further notice need be given.

37. The Debtors request that they be authorized to serve a copy of the signed interim order authorizing DIP Financing which fixes the time and date for filing with objections, if any, by first class mail upon the parties listed above. The Debtors request that the Court consider such notice of the final hearing to be sufficient notice under Bankruptcy Rule 4001.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that this Court enter the attached interim order and grant such other relief as this Court may deem just and proper.

Dated: November 6, 2009

                                  The Summit at Copper Square et al

                                  By: /s/ Miriam R. Stein
                                       One of their Attorneys